UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**KIRBY DEVELOPMENTS, LLC,**

    **Plaintiff,**

  v.                                    Case No. 2:18-cv-500
                                                  **JUDGE GEORGE C. SMITH**
**XPO GLOBAL FORWARDING, INC.,**        **Magistrate Judge Jolson**
*et al.*,

    **Defendants.**


## OPINION AND ORDER

This matter is before the Court upon motions by Defendants Todd Wilkin and XPO Global Forwarding, Inc. to stay this action. (Docs. 16 and 38). Plaintiff Kirby Developments LLC responded. (Docs. 29 and 41) and Defendants replied. (Docs. 36 and 44). Plaintiff also filed a Motion for Leave to File *Sur-Reply* (Doc. 45).[1] The motions are ripe for disposition. For the following reasons, Defendant Wilkin's Motion to Stay is **DENIED** and XPO's Motion to Stay is **GRANTED in part and DENIED in part**.

### I.    BACKGROUND

Plaintiff Kirby Developments LLC's ("Kirby" or "Plaintiff") Complaint asserts various causes of action arising out of a fraudulent scheme allegedly carried out by Defendants XPO Global Forwarding, Inc. ("XPO")[2], Midwest Coal, LLC ("Midwest"), Mid America Tire of

---

[1] Plaintiff has submitted a *Sur-Reply* to address matters that Defendant XPO raised for the first time in its Reply. Accordingly, Plaintiff's Motion for Leave to File *Sur-Reply* is **GRANTED**.
[2] Kirby's Complaint names as a defendant XPO Logistics, but XPO states that its proper name is XPO Global Forwarding, Inc.

Hillsboro, Inc. d/b/a Best-One Tire & Service of Hillsboro ("Mid America), Afif Baltagi ("Baltagi"), John Eckerd ("Eckerd"), Todd Wilkin ("Wilkin" or "Defendant"), L.A.D. Impex Corporation ("LAD"), and Ahmet Neidik ("Neidik"). (Doc. 1, Compl.).

This case arises out of an alleged fraudulent scheme involving the sale of off-the road mining tires ("OTR Tires"). Eckerd approached Kirby to gauge its interest in the buying and selling of OTR Tires. (*Id.* at ¶ 16). Eckerd explained to Kirby that: buyers for the tires—an Australian company, Giant Tyre Service PTY Ltd. ("Giant Tyres")—had already been lined up; the tires were being purchased from a company named Mid America; and when Eckerd conducted deals with Mid America he usually worked in congruence with another company named Midwest. (*Id.* at ¶¶ 17–18, 21).

Shortly thereafter, Eckerd introduced Kirby to Jason Adkins ("Adkins"), the principal of Midwest. (*Id.* at ¶ 20). Eckerd claimed that Adkins was a trustworthy individual and a legitimate businessman. (*Id.*). Kirby and Midwest, through Adkins, eventually came to an agreement on the OTR Tire transactions; Adkins agreed to assist Kirby with executing the OTR Tire sales to overseas buyers. (*Id.* at ¶ 23). Kirby agreed to invest nearly $6.7 million and Adkins, through Midwest, would contribute $600,000 and 54 OTR Tires with an alleged value of over $2.7 million. (*Id.*). The agreement arranged for the profits from the transactions to be split between the parties. (*Id.*). Under the agreement, Kirby agreed to have the OTR Tires stored in an XPO facility in Houston whose purported branch manager was Balgati. (*Id.* at ¶ 29). Additionally, the parties agreed that LAD was to act as the escrow agent and freight forwarder for the OTR Tire transactions. (*Id.* at ¶ 37).

After receiving notice that Kirby had obtained the funds, Midwest agreed to commence the buying and selling of the OTR Tires. (*Id.* at ¶ 35). After Midwest confirmed that it had fulfilled

its obligations under the agreement, Kirby would authorize LAD—a company owned by Neidik and controlled by Neidik and Adkins—to disperse the funds that Kirby sent to Mid America. (*Id.* at ¶¶ 35 and 38). LAD was not permitted to release any funds to Mid America without receiving authorization from Kirby. (*Id.* at ¶ 37). Kirby alleges that Mid America, through Wilkin, would prepare false work orders to fraudulently obtain funds from Kirby. (*See id.* at ¶¶ 42, 48, 53, and 56). Wilkin would also supply Kirby with documentation indicating the amount of tires purchased and the purchased tires' serial numbers. (*Id.* at ¶¶ 43, 49, and 54–55). Likewise, Kirby alleges that XPO was to not distribute the tires it stored on behalf of Kirby without Kirby's authorization; Kirby contends that XPO did disperse such tires without its explicit authorization. (*See id.* at ¶¶ 52, 68–69; *see also* Docs. 1-14, Ex. M; 1-18, Ex. Q;1-21; Ex. T; 1-22, Ex. U at 2).

Furthermore, the transaction with the Giant Tyres never came to fruition, nor did any sale of the OTR Tires take place. (*See id.* at ¶¶ 21, 61 and 63). Kirby alleges that all named Defendants worked in tandem to perpetuate this scheme to defraud. (*See id.* at ¶¶ 71– 73). Kirby asserts that because of this fraudulent enterprise—orchestrated by the above-listed Defendants—it was defrauded out of $6,691,000. Kirby now seeks damages in the amount it invested and other damages consequent to that investment and asserts 12 causes of action in its Complaint against Defendants.

Moreover, Kirby is not the only entity claiming that it was defrauded through sham sales of tires orchestrated by Adkins, Mid America, and XPO. This Court previously stayed all proceedings in two related cases involving many of the same players in an alleged fraudulent tire sale in which Adkins procured financing from Abington Emerson Capital, LLC and Great Southland Limited. *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, Doc. 144 (S.D. Ohio June 1, 2018); *Great Southland Ltd. v. Landash Corp.*, No. 2:17-cv-719, Doc. 90 (S.D. Ohio

June 27, 2018). However, this Court recently lifted the stay over the entirety of the *Abington* case, finding that the defendants' need for the stay no longer outweighed the potential prejudice that Abington would suffer if the stay were to continue.³ *See Abington*, No. 2:17-cv-143, Doc. 159 (S.D. Ohio Oct. 3, 2018). Wilkin and XPO now ask the Court to exercise its inherent authority to stay proceedings as against all Defendants until parallel criminal proceedings have been fully adjudicated and to avoid prejudice and promote judicial economy. (*See generally* Docs. 16 and 38).

Around the same time this Court issued the Order lifting the stay in *Abington*, a Bankruptcy Court for the Southern District of Ohio was ruling on Abington's Motion for Comfort Order. The bankruptcy court found that Section 362(a)(3) stayed entirely Abington's conversion and negligent bailment claims and stayed discrete allegations of Abington's federal and state RICO claims that required a determination of ownership of the tires in the Landash bankruptcy estate. *See In re Landash Corp.*, 2:18-bk-503000, Doc. 146, Ord. on Mot. for Comfort Ord. at 2 (Bankr. S.D. Ohio Oct. 15, 2018). XPO contends that the bankruptcy court's Order further demonstrates the need for a stay over the entirety of this action. Plaintiff asserts that a stay is unnecessary and would result in prejudice to Plaintiff. (*See* Docs. 44, XPO Rep. at 2–5; 45-1, Pl. Sur-Rep. at 1–2).

## II.   STANDARD OF REVIEW

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting

---

³ XPO has filed a Motion for Reconsideration of the Court's Order lifting the stay in *Abington*; that Motion is currently pending before the Court. (*See Abington*, 2:17-cv-143, Doc. 161, Mot. for Reconsid. (S.D. Ohio Oct. 9, 2018)).

*Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In deciding whether to grant a stay, courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court. *Grice Eng'g, Inc. v. JG Innovs., Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted); *see also Ferrell v. Wyeth–Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) ("There is no precise test in this Circuit for when a stay is appropriate. However, district courts often consider the following facts: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy."). The movant bears the burden of showing both a need for delay and that "neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396.

### III.  DISCUSSION

Defendants Wilkin and XPO both move to stay this proceeding. Wilkin's arguments in favor of a stay take two basic forms: (1) the action should be stayed pending resolution of parallel criminal proceedings; and (2) the Court should exercise its inherent authority to stay the case in order to avoid prejudice and promote judicial economy. Likewise, XPO contends that a stay is necessary for two reasons: 1) the bankruptcy stay extends to this action; and 2) due to the unavailability of all parties, moving forward with this case would not be economical and would cause prejudice to Defendants. (*See generally* Doc. 38, XPO Mot. to Stay). Plaintiff opposes a stay, arguing that staying this action would result in prejudice to itself, which outweighs Defendants' need for a stay. (*See generally* Docs. 29, Resp. to Wilkin; 41, Resp. to XPO). For

the reasons that follow, the Court finds that any claim which requires a determination as to the Landash bankruptcy estate tires' is stayed so to not interfere with the bankruptcy court's exclusive jurisdiction over assets in the bankruptcy estate; but staying the entire action is not warranted at this time.

**A.       Automatic bankruptcy stay**

On October 15, 2018, a bankruptcy court for the Southern District of Ohio entered an opinion finding that some of the tires disputed in this case are property of the Landash Corporation bankruptcy estate. *See In re Landash, Corp.*, 2:18-bk-50300, Doc. 146 (Bankr. S.D. Ohio Oct. 15, 2018). As such, the bankruptcy court held that the automatic bankruptcy stay extended to any discrete claim "which require determination of ownership of the tires[.]" *Id.* at 2. The bankruptcy court found that § 362(a)(3) stays the entirety of a related case's conversion and negligent bailment claims, as well as to any discrete part of a federal or state RICO claim that necessitates a determination as to the owner of the tires. *Id.*; *see also Abington*, No. 2:17-cv-143, Doc. 71, Second Am. Compl. (S.D. Ohio Feb. 6, 2018).

XPO asserts that the bankruptcy court's holding necessitates staying the case at bar. XPO submits that, at a minimum, this Court must stay Plaintiff's conversion and negligent bailment claims as the bankruptcy court specifically found that Abington's claims of such necessitated a determination of ownership of the tires. In an attempt to distinguish the Bankruptcy Court's Order from the case at hand, Plaintiff asserts that Defendants' Motions to Stay must be denied for the same reasons this Court lifted the stay in the related *Abington* case. (*See* Doc. 45-1, Pl. Sur-Rep. at 1–2). Plaintiff's argument ignores the timing of these two events. The Court in *Abington* issued the Order lifting the stay prior to the bankruptcy court reducing its oral ruling to writing.

As such, the Court finds that Counts IX and X of Plaintiff's Complaint—Plaintiff's negligent bailment and conversion claims—are stayed in their entirety pursuant to 11 U.S.C. § 362(a)(3). These are the same causes of action that the bankruptcy court found must be stayed in *Abington*. *See In re Landash Corp.*, 2:18-bk-50300, Doc. 146 at 2; *see also Abington*, No. 2:17-cv-143, Doc. 71, Second Am. Compl. at ¶¶ 132–142. Further, the discrete allegation contained in Count VII of Plaintiff's Complaint—a breach of contract claim against XPO—must also be stayed. The Court finds that the allegation in paragraph 132 of Plaintiff's Complaint intrudes upon the bankruptcy court's exclusive jurisdiction over the tires in the Landash bankruptcy estate and is stayed.

However, this Court finds that the automatic bankruptcy stay does not extend to the remaining allegations in Count VIII nor to Plaintiff's remaining claims, as such claims do not necessitate a determination as to ownership over the tires in the Landash bankruptcy estate. The Court finds that the remaining allegations in Count VIII to be similar to the breach of contract claim against XPO in Abington's Second Amended Complaint. (*Compare* Doc. 1, Compl. ¶¶ 126–133, *with Abington*, No. 2:17-cv-143, Doc. 71, Second Am. Compl. at ¶¶ 122–126). Yet, the bankruptcy court was silent on Abington's similar breach of contract claim against XPO and made no express findings that such allegations necessitated a determination of ownership over the tires as it explicitly did for Abington's negligent bailment and conversion claims. The Court finds this silence to be telling and finds no reason to extend the bankruptcy court's holding beyond its plain language.

Thus, Counts IX and X of Plaintiff's Complaint are hereby stayed pursuant to 11 U.S.C. § 362(a)(3), likewise the discrete allegation in Plaintiff's eighth claim—paragraph 132 of the

Complaint—is stayed. However, the automatic bankruptcy stay does not extend to Plaintiff's remaining claims nor to the remaining allegations in Count VIII.

**B.      Stay pending resolution of parallel criminal proceedings**

Wilkin's counsel argues that there is reason to believe there is an ongoing parallel criminal investigation, although the scope of the suspected investigation and exactly how it might parallel Kirby's civil claims is unclear. Wilkin argues that Kirby's Complaint "mirrors an indictment" and "makes repeated averments of fraudulent conduct and false statements by Mr. Wilkin," although "the United States Attorney's Office for the Southern District of Ohio cannot, as a matter of policy, confirm or deny the existence of a grand jury investigation into the matters alleged in the Complaint." (Doc. 16, Mot. to Stay at 4). The possibility of a criminal investigation, Wilkin argues, places him

> in a constitutionally untenable position: either waive his rights under the Fifth Amendment in the face of serious allegations of potentially criminal conduct and the existence of a criminal investigation into those same allegations, or invoke the Fifth Amendment privilege by declining to respond to discovery and declining to testify further on his own behalf, thereby prejudicing his ability to defend himself in the present matter[.]

(*Id.*)

The Court possesses broad discretion to stay civil litigation pending the resolution of parallel criminal proceedings. *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (citing *Landis v. No. Am. Co.*, 299 U.S. 248, 254-55 (1936). However, there is no evidence, apart from defense counsel's assertion, that any criminal investigation is actually ongoing as to Wilkin. (*See* Doc. 36, Rep. at 3). But even if an investigation were ongoing, "a stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy" that is not generally granted in the absence of an indictment. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627–28 (6th

Cir. 2014). *See also Chao*, 498 F. Supp. 2d at 1037 ("[P]re-indictment requests for a stay, as in this case, are usually denied.").

When there are pre-indictment indications of a parallel criminal investigation (*e.g.*, when law enforcement conducts a raid of the defendant's premises (as in *E.M.A. Nationwide*), or when a defendant is notified in writing by the prosecutor of an investigation (as in *Chao*)), courts typically undertake a balancing test considering six factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide*, 767 F. 3d at 627. But here, where there are no indications that a criminal investigation is actually ongoing as to Wilkin. Thus, there is no way for the Court to evaluate the extent to which the two proceedings may overlap and the effects a criminal investigation might have on the civil litigation.

Even if Wilkin had evidence of a criminal investigation, his Fifth Amendment concerns are attenuated by the lack of an indictment. *Id*. at 629 ("Because there was no indictment, however, the Fifth Amendment concerns expressed by Defendants are not very compelling."). Moreover, Wilkin has already participated in significant discovery in a related action, including sitting for his deposition where he admitted to wiring most of the money advanced by Abington for the sale of the tires to Adkins's personal bank account and signing documents that falsely represented that Mid America was the owner of the tires. (*See Abington*, No. 2:17-cv-143, Doc. 67-1, Wilkin Dep. at 21–23, 48–50).

The Court is aware of an active criminal case in which Defendant Eckerd has been formally charged.[4] *See United States v. Eckerd*, 2:18-mj-3556 (D. N.J. 2018). But "'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings.'" *E.M.A. Nationwide*, 767 F.3d at 627 (quoting *S.E.C. v. Novaferon Labs, Inc.*, No. 91-3102, 941 F.2d 1210, 1991 WL 158757, at *2 (6th Cir. Aug. 14, 1991)). Presently, the Court is unaware of any other defendants that have been formally charged via Indictment or Information. Thus, the Court finds that, at this time, Eckerd's ongoing criminal case[5] does not provide sufficient grounds to stay this action and that staying this action pending the outcome of Wilkin's as-yet-hypothetical parallel criminal investigation is equally uncompelling.

**C.     Stay to avoid prejudice and promote judicial economy**

Defendants Wilkin and XPO further ask the Court to exercise its discretion to stay this case so to avoid prejudice and promote judicial economy. Defendant Wilkin states that a stay is necessary because: 1) Wilkin's plan to invoke his Fifth Amendment privilege; 2) co-defendants' current bankruptcy proceedings; and 3) going forward with this case would require "substantial judicial management of the discovery process." (Doc. 16, Wilkin Mot. to Stay at 4). Defendant XPO also requests that the Court stay this action because: 1) at least one related case is stayed; 2) the unavailability of all Defendants due to ongoing bankruptcy proceedings; and 3) Wilkin's invocation of his Fifth Amendment right. (Doc. 38, XPO Mot. to Stay at 3–4). Kirby counters

---

[4] The Court need not balance all six factors laid out in *E.M.A. Nationwide* that a court typically analyzes when a defendant has been indicted as, at this time, Defendant Eckerd is the only defendant to have been indicted and—because of his bankruptcy proceeding—this case is stayed as to him. *See E.M.A. Nationwide*, 767 F.3d at 627 (listing the six factors); *United States v. Eckerd*, 2:18-mj-3556 (D. N.J. 2018); (*see also* Doc. 17, Eckerd Suggestion of Bankr.).

[5] Further, it is not clear that Eckerd's criminal case is connected to this case's alleged fraudulent scheme as, in the criminal case, Eckerd has been accused of money laundering in connection with narcotics trafficking. *See Eckerd*, 2:18-mj-3556, Doc. 1, Crim. Compl. (D.N.J. Mar. 8, 2018).

that delaying this matter would neither avoid prejudice nor promote judicial economy. (Docs. 29, Resp. to Wilkin at 5; 41, Resp. to XPO at 6–7). The Court agrees with Plaintiff.

The law is quite settled that the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "Thus the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396. The Court finds that none of the reasons that Defendants have presented, either standing alone or taken collectively, establish a sufficiently compelling reason to stay this action and that the potential prejudice to Plaintiff outweighs the Defendants' need for the stay. Thus, Defendants have failed to meet their burden of demonstrating the pressing need for the stay.

As discussed above, Wilkin's Fifth Amendment concerns are attenuated as he has yet to be formally charged. *See E.M.A. Nationwide*, 767 F.3d at 629 ("Because there was no indictment, however, the Fifth Amendment concerns expressed by Defendants are not very compelling."). Additionally, Wilkin's argument concerning Adkins' Fifth Amendment right is equally unpersuasive. Adkins is not a named defendant in this action, his role in this action is only as a representative of Midwest. (*See generally* Doc. 1, Compl.). It is well-settled that business organizations have no Fifth Amendment guarantees against self-incrimination. *See United States v. White*, 322 U.S. 694, 698 ("The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."). Likewise, an officer's personal Fifth Amendment privilege cannot be extended to the business organization, an officer must produce the organization's documents even if such documents are detrimental to the officer personally. *See*

11

*Braswell v. United States*, 487 U.S. 99, 110 (1988) ("[T]he custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege."); *Bellis v. United States*, 417 U.S. 85, 87 (1974) ("[A]n individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally."). Thus, as Adkins is only involved in this case in his representative capacity, he cannot invoke his personal Fifth Amendment protections and refuse to respond to discovery requests.

The Court now turns to Defendants' arguments centered upon stays being issued in related cases. Defendants submitted their motions on July 12, 2018, and August 28, 2018, prior to the Court dissolving the stay in *Abington*. *See Abington*, No. 2:17-cv-143, Doc. 159, (S.D. Ohio Oct. 3, 2018).[6] Additionally, Adkins' automatic bankruptcy stay has been lifted. *See In re Adkins*, 2:18-bk-50671 (Bankr. S.D. Ohio 2018). Thus, any arguments that Defendants predicated upon either the stay in *Abington* or Adkins' bankruptcy stay are now moot.

Furthermore, there are currently ongoing proceedings in other courts involving similar defendants that arose out of similar fraudulent schemes. *See Vecron Exim Ltd. v. XPO Logistics, Inc., et al.*, No. 4:18-cv-2394 (S.D. Tex.); *S. Start Capital, LLC v. XPO Global Logistics, Inc., et al.*, No. DC-18-07847 (Dallas Cty. Dist. Ct.). Neither of these cases are currently stayed; in fact, the court in *Vecron* recently denied XPO's motion to stay that action. *Vecron Exim Ltd.*, No. 4:18-cv-2394, Doc. 32 at 2. As such, staying this case would lessen Plaintiff's future potential to recover from these defendants given these parallel cases in other courts. *See Karimona Invs., LLC v.*

---

[6] The stay in *Great Southland Ltd*, No. 2:17-cv-719, (S.D. Ohio 2018), is still in effect.

*Weinreb*, No. 02-cv-1792, 2003 WL 941404, at *3 (S.D.N.Y. Mar. 7, 2003) (denying defendant's motion to stay, finding that: "Plaintiff has legitimate concerns that further delay may prejudice its ability to recover against" the defendant given defendant is a party in another case that arose of similar allegations as the case at bar.). Moreover, a stay would delay Plaintiff's ability to obtain discovery. As such, the Court finds that staying this action would cause substantial prejudice to the Plaintiff.

XPO asserts that the Court's prejudice concerns should be alleviated because "a plethora of subpoenas" have been issued in related cases "to many of the likely suspects to whom Plaintiff would wish to issue discover[.]" (Doc. 44, XPO Rep. at 6). XPO further submits that "the concern about disappearing records in this case should be minimal and alone is not enough to overcome the burdens associated with proceeding with this case[.]" But this assertion is unpersuasive for two reasons. First, as further explained above, the potential prejudice to Plaintiff is mainly predicated upon Plaintiff's diminished ability to recover from Defendants if this case were stayed while other related matters continued. Second, XPO confuses upon whom the burden is placed. The burden is not on the Plaintiff to prove that a stay is not required; it is on the parties seeking the stay—XPO and Wilkin—to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Neither XPO nor Wilkin has done so.

At this time, XPO's concern of "piecemeal litigation" due to two of Plaintiff's claims being stayed pending the Landash bankruptcy proceeding, does not outweigh the prejudice Plaintiff will suffer if the Court granted a stay over the entirety of this matter. The Court acknowledges that some frustration may occur because two of Plaintiff's claims are stayed, but the potential prejudice to Plaintiff if the entirety of this action were to be stayed outweighs this frustration. Thus, the

Court, based on its inherent authority to control its own docket, finds that Defendants' reasons for staying this action in its entirety are not sufficiently compelling.

## IV.    CONCLUSION

For the foregoing reasons, Wilkin's Motion to Stay is **DENIED**; XPO's Motion to Stay is **GRANTED in part and DENIED in part**. Counts IX and X of Plaintiff's Complaint are stayed in their entirety pursuant to 11 U.S.C. § 362(a)(3). The discrete allegation[7] of Count VIII that requires a determination of the Landash bankruptcy tires' ownership is likewise stayed. Additionally, this matter is currently stayed as to the following Defendants due to their ongoing bankruptcy proceedings: Eckerd, *see In re Eckerd*, No. 18-41521 (Bankr. E.D. Tex. 2018); and Mid America, *see In re Mid America Tire of Hillsboro, Inc.*, No. 1:18-bk-13908 (Bankr. S.D. Ohio 2018). The parties are instructed to contact Magistrate Judge Jolson's chambers to establish a new case management schedule.

The Clerk shall remove Documents 16, 38, and 45 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                                 */s/ George C. Smith*
                                                 **GEORGE C. SMITH, JUDGE**
                                                 **UNITED STATES DISTRICT COURT**

---

[7] Paragraph 132 of Plaintiff's Complaint.