# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Kirby Developments LLC,

       Plaintiff,                         Case No. 2:18-cv-500

       v.                              Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

XPO Global Forwarding, Inc., *et al*.,

       Defendants.

## OPINION & ORDER

Defendant Fox, Byrd & Company, P.C. utilizes Fed. R. Civ. P. 12(B)(6) to move for dismissal of Plaintiff Kirby Developments, LLC's claims against Fox for negligence and conspiracy. (ECF No. 113.) Kirby opposes (ECF No. 120) and Fox has replied (ECF No. 125). After due review, the Court **GRANTS** Kirby leave to amend its First Amended Complaint as to its two counts against Fox and holds Fox's Motion to Dismiss (ECF No. 113) is **DENIED** as **MOOT**.

## I.    BACKGROUND

Kirby has two members—Scott Kiger ("Kiger") and Charlie Riggs ("Riggs"). (ECF No. 91 ¶¶ 20, 24.) Kirby's First Amended Complaint asserts various causes of action arising out of an allegedly fraudulent scheme purportedly carried out by Defendants XPO Logistics, Inc. and its wholly-owned subsidiary XPO Global Forwarding, Inc. (collectively "XPO"), Midwest Coal, LLC ("Midwest"), Mid America Tire of Hillsboro, Inc. d/b/a Best-One Tire & Service of Hillsboro ("Mid America"), Jason Adkins ("Adkins"), Afif Baltagi ("Baltagi"), John Eckerd ("Eckerd"), Todd Wilkin ("Wilkin"), L.A.D. Impex Corporation ("LAD"), Ahmet Neidik ("Neidik") and Fox. (ECF No. 91.)

Adkins is the principal of Midwest. *Id*. ¶ 11.  Baltagi is or was at all relevant times the branch manager of XPO's warehouse in Houston, Texas. *Id*. ¶ 12. Wilkin is the principal of Mid-America. Neidik is LAD's principal. *Id*. ¶ 16.

This case focuses on the buying and selling of off-the-road mining tires ("OTR Tires"). Eckerd knew Kiger from childhood. *Id*. ¶ 20. He approached Kiger to gauge Kirby's interest in investing in those activities.  *Id*. Kiger enlisted non-parties O'Connor Group L.P. and its principal, John O'Connor ("O'Connor"), to help Kirby determine if it should participate in the endeavor. *Id*.

After meeting with Kiger, Eckerd e-mailed O'Connor several documents outlining the investment opportunity that included, *inter alia*, information about potential partner Midwest. *Id*. ¶ 21. Specifically, the papers stated that Eckerd had several buyers for the tires; the tires would be purchased from Mid America; and when Eckerd conducted deals with Mid America he usually worked in congruence with named Midwest. *Id*. at Ex. B. An independent accountant's compilation report ("Report") for Midwest for 2013 and 2014, as well as unsigned 2014 federal tax forms ("Tax Forms") for Adkins, both completed by accounting firm Fox, were also included in the transmission. *Id*. ¶ 21 and Ex. A.

Shortly thereafter, Eckerd introduced Kiger and Riggs to Adkins, the principal of Midwest. *Id*. ¶ 24. Eckerd claimed that Adkins was a trustworthy individual and a legitimate businessman. *Id*. Adkins said the tires could be sold within three to six months to an Australian company, Giant Tyre Service PTY Ltd. ("Giant Tyres"). *Id*. ¶ 25. Adkins originally asked Kirby and O'Connor to loan Midwest money so that Midwest could purchase the tires. *Id*. 26. Kiger and O'Connor, however, wanted Kirby to buy the tires and Adkins to help sell the tires to Giant Tyres. *Id*.

Kirby and Midwest, through Adkins, eventually came to an agreement on the OTR Tire transactions. *Id*. ¶ 34. In particular, Kirby, O'Connor and Midwest were to each make contributions to fund Kirby's purchase of the tires from Mid America. *Id*. ¶ ¶ 35, 40. Kirby agreed to invest nearly $6.7 million and Adkins, through Midwest, would contribute $600,000 as well as 54 OTR tires Midwest already owned that had an alleged value of over $2.7 million. *Id*. ¶ ¶ 27, 36. Under the agreement, Kirby would buy and own the tires, Adkins would help sell them, and the profits from the transactions to be split among the parties. Kirby agreed to have the OTR Tires stored in an XPO facility in Houston whose purported branch manager was Balgati. *Id*. at ¶ 43. Additionally, the parties agreed that LAD was to act as the escrow agent and freight forwarder for the OTR Tire transactions. *Id*. ¶ 41.

After receiving notice that Kirby had obtained the funds, Midwest agreed to commence the buying and selling of the OTR Tires. *Id*. ¶ 37. After Midwest confirmed that it had fulfilled its obligations under the agreement, Kirby would authorize LAD—a company owned by Neidik and controlled by Neidik and Adkins—to disperse the funds that Kirby sent to Mid America. *Id*. ¶ 39. LAD was not permitted to release any funds to Mid America without receiving authorization from Kirby. *Id*. at ¶ 41.

Kirby alleges that Midwest, through Adkins, prepared false documents to fraudulently obtain funds from Kirby. *Id*. ¶ 45. Specifically, Kirby alleges that Mid America, through Wilkin, prepared false work orders and seller's release warehouse letters indicating the number of tires purchased. Kirby claims those documents contained the purchased tires' serial numbers to provide the appearance of legitimacy and further the fraud. *Id*. ¶ ¶ 46-48, 51.

The transaction with Giant Tyres never came to fruition, nor did any sale of the OTR Tires occur. *Id*. ¶ ¶ 62-71. Kirby's First Amended Complaint alleges that all Defendants worked

in tandem to perpetuate this scheme to defraud Kirby. Kirby asserts that because of this fraudulent enterprise—orchestrated by the Defendants—Kirby was defrauded out of $6,691,000. Kirby now asserts 12 causes of action against Defendants while seeking actual, consequential, punitive, and treble damages.

Of import to the present motion are Kirby's two counts against Fox. Specifically, Kirby alleges Fox negligently prepared the false and inaccurate Report and Tax Documents while knowing that Kirby would rely upon the Report and Tax Documents when determining to enter into the agreement with Midwest. *Id.* ¶ 163-68. Kirby also alleges Fox did so while acting in concert with the other Defendants in order to induce Kirby to work with Midwest. Thus, Kirby asserts a civil conspiracy count against Fox. *Id.* ¶ ¶ 169-74.

Fox now argues both counts are subject to dismissal because they are facially implausible. (ECF No. 113 at 3.) Kirby opposes, and alternatively seeks leave to amend. (ECF No. 120 at 1 n. 1.) Fox's Reply reiterates that the First Amended Complaint fails to allege a sufficient factual basis to sustain Kirby's noted counts and opposes Kirby's alternative leave request. (ECF No. 125 at 1.) The Court will now address each contention in turn.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. ANALYSIS

### A. Negligence

The First Amended Complaint pertinently provides:

**COUNT XII**

**Negligence – Fox Byrd**

163. Kirby hereby incorporates by reference each preceding paragraph set forth in this Complaint as if fully rewritten herein.

164. Fox Byrd is an accounting firm that prepared Midwest's financial records provided to Kirby and upon which Kirby relied in entering into the OTR Agreement with Midwest and ultimately wiring $6,691,000.00 for the OTR Tire transactions. See Ex. A (Independent Accountant's Compilation Report); Ex. E (Tax Returns).

165. Fox Byrd was negligent in preparing and providing the financial records upon which Kirby relied.

166. Fox Byrd knew or reasonably should have known that Kirby, and other companies, would rely on Midwest's financial records they prepared and/or provided to determine the extent to which such companies would engage in business dealings with Midwest and Adkins.

167. Fox Byrd knew or reasonably should have known that the financial records it prepared were false or otherwise inaccurate.

168. As a direct and proximate result of Fox Byrd's negligence, Kirby has suffered damages in excess of $6,691,000.00.

(ECF No. 91 at ¶¶ 163-168.) Fox contends that this simple negligence count is subject to dismissal because Fox owes no duty to Kirby. (ECF No. 113 at 5.) Kirby's Opposition frames its negligence count as one for "negligence and/or negligent misrepresentation." (ECF No. 120 at 2-5.) Kirby then argues that it was part of a "reasonably foreseeable group" that would rely on the Report and Tax Documents such that Fox did owe Kirby a duty. *Id*. 3. Fox replies by disputing whether Kirby alleges a negligent misrepresentation count. (ECF No. 125.)

"It is well established that a plaintiff must demonstrate the following elements in an action for professional negligence: (1) the existence of a legal duty, (2) a breach of that duty, (3) proximate cause, and (4) injury or damages." *Ortner v. Kleshinski, Morrison & Morris*, 5th Dist. No. 02-CA-4, 2002-Ohio-4388, ¶ 19 (Aug. 21, 2002). The elements of negligent misrepresentation are as follows:

> 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'

*Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989) (quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1)), applied by Ohio Supreme Court in *Haddon View Investment Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154 (1982). The Ohio Supreme Court held in *Haddon* that an accountant may be liable for purely economic damages based upon a theory of negligent misrepresentation. *Marine Direct v. Dougherty Marine, Inc*., No. 2:06-cv-0100, 2007 U.S. Dist. LEXIS 1414, at *3-4 (S.D. Ohio Jan. 8, 2007). Specifically, the *Haddon* court held an "accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically

foreseen." *Haddon,* 70 Ohio St. 2d at 157. By so holding, the court eliminated the prior requirement that the party be in privity of contract with the accountant while simultaneously ruling that the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes. *Id.* In other words, "'[a]n accountant should be liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons.'" *Id*. (quoting *Rusch Factors, Inc., v. Levin* 284 F. Supp. 85, 93 (D.R.I., 1968)). Hence, because each claim contains the same duty element, and because Kirby's Motion to Dismiss is premised on duty, the Court need not discern whether the First Amended Complaint asserts a professional negligence count and/or a negligent misrepresentation count as the analysis is the same.

The key question thus becomes whether Kirby's First Amended Complaint alleges sufficient facts plausibly showing Fox understood Adkins would show the Report and Tax Documents to Kirby for business purposes. In this regard, the First Amended Complaint does not allege that Fox knew of Kirby's existence or that Fox had any contact with Kirby either before preparing the Report and Tax Documents or after completing that paperwork. Fox notes that the Report and Tax Documents were prepared for Adkins and Midwest Coal prior to Eckerd's meeting with Kiger. The First Amended Complaint does not allege that Adkins told Fox the Report and Tax Documents would be provided to Kirby. Fox therefore reasons that it had no way of knowing that the Report and Tax Documents would be provided to Kirby by Eckerd, and that Kirby would rely on them when deciding to do business with Midwest. Kirby responds simply that Fox "should have reasonably foreseen that [Kirby] would rely on" the Report and Tax Documents because Kirby is prospective business partner of Midwest. (ECF No.

120 at 4.) Kirby also argues its First Amended Complaint is sufficient because it alleges that Fox owed Kirby a duty. (ECF No. 120 at 4.)

The Court agrees with Fox that the First Amended Complaint lacks sufficient factual support state a claim to relief that is plausible on its face. As Fox contends, there are simply no facts alleged showing that Kirby was part of a limited class that would rely upon the Report. This, of course, prevents Fox from "specifically foresee[ing]" Kirby's reliance. And, Kirby's mere recitation of the elements of his claims "will not do." *Twombly*, 550 U.S. at 555.

Because the First Amended Complaint does not provide factual content allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," Fox's Motion to Dismiss Kirby's negligence count seemingly has merit. *Iqbal*, 556 U.S. at 663. However, dismissal is a "harsh remedy" and amendment is the preferred course. *Powell v. Morris*, 184 F.R.D. 591, 594 (S.D. Ohio 1998); *see also Guzowski v. Hartman*, 723 F.2d 909 (6th Cir. 1983) ("Ordinarily, a court confronted with a deficient pleading would grant leave to amend the complaint, since dismissal is a harsh sanction."). Consequently, the Court will allow Kirby leave to amend its First Amended Complaint to address the noted deficiencies over Fox's objections. *See* ECF No. 120 at 1 n. 1; *see also* ECF No. 125 at 14. As the Court is permitting amendment, Fox's Motion to Dismiss (ECF No.113) Kirby's negligence count is **DENIED** as **MOOT**.

### B. Civil Conspiracy

Count Eight asserts that all of the Defendants "by common understanding and design, came to a mutual understanding to create false [fraudulent] documents and communications . . . to induce Kirby to enter into the" Agreement. (ECF No. 91 at ¶ ¶ 170, 173.) The First Amended Complaint further claims that the defendants did so intentionally and with malice. *Id.* ¶ 172.

"Civil conspiracy is defined as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kimble Mixer Co. v. Hall*, 5th Dist. No. 2003-AP-01-3, 2005-Ohio-794, ¶ 38 (Feb. 22, 2005). A claim for civil conspiracy requires "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful [tort] independent from the conspiracy itself." *State ex rel. Morrison v. Wiener*, 9th Dist. Nos. 27891, 27917, 2017-Ohio-364, ¶ 13, 83 N.E.3d 292, 296 (Jan. 31, 2017) (citation omitted). In this instance, a malicious combination requires "a common understanding or design, even if tacit, to commit an unlawful act." *Gosden v. Louis*, 116 Ohio App.3d 195, 219 (9th Dist. 1996).

Fox contends dismissal is appropriate on this count because the First Amended Complaint fails to allege a factual basis showing Fox knew of the objective to defraud Kirby. (ECF No. 113 at 8-9.) Fox highlights that the First Amended Complaint does not allege that Fox knew about Kirby or the agreement such that Fox could not have been part of a common understanding or design to defraud Kirby. *Id*. In response, Kirby reverts to mechanically reciting the elements for a civil conspiracy claim. (ECF No. 120 at 6.) As above, this is insufficient. *Twombly*, 550 U.S. at 555.

So, while Kirby's First Amended Complaint fails to allege a sufficient factual basis to allow the Court to reasonably infer plausibility on the conspiracy count, the Court again notes that dismissal is a harsh remedy. Because the Court is permitting Kirby to amend the First Amended Complaint with respect to its negligence count against Fox, the Court will permit Kirby leave to amend the First Amended Complaint as to its civil conspiracy claims against Fox over Fox's objections. *See* ECF No. 120 at 1 n. 1; *see also* ECF No. 125 at 14. This means that Fox's Motion to Dismiss Kirby's conspiracy claims is **DENIED** as **MOOT**.

## IV.    CONCLUSION

Kirby shall file its Second Amended Complaint within seven days of the entry of this Opinion and Order. The amendment shall be limited to Kirby's negligence and conspiracy counts against Fox. Absolutely no further amendments will be permitted. Kirby's failure to abide with this Opinion and Order will result in Kirby's claims against Fox being dismissed, without additional notice, for the reasons set forth above.

Fox's Motion to Dismiss (ECF No. 113) is **DENIED** as **MOOT**.

**IT IS SO ORDERED.**


/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**